## MISSOURI, O. & G. RY. CO. v. VANDIVERE.

No. 3559.   Opinion Filed June 23, 1914.

(141 Pac. 799.)

1.  **APPEAL AND ERROR**—Ground for Reversal—Trial Docket. Section 5832, Comp. Laws 1909 (Rev. Laws 1910, sec. 6164), requires that the clerk of the court shall make out a trial docket at least twelve days before the first day of each term of the court, and section 5837, **Id.** (Rev. Laws 1910, sec. 6169), requires that a copy of such docket shall be made for the use of the bar before the first day of the term, but a judgment will not be reversed merely upon the contention that such trial docket was not made out as required by law, when it does not appear from the record that such contention is true or that the complaining party was substantially prejudiced thereby, if such contention were true.

2.  **SAME**—Review—Setting of Cases—Discretion. In the calling and setting or resetting of cases for trial, a trial judge must of necessity be vested with a reasonable scope of discretion, and a judgment will not be reversed because the court of its own motion set a case for trial at a later date than that on which it was set by the clerk of the court in making up its trial docket, nor because the court may have, of its own motion, reset such case for a later day in the term, where no abuse of discretion is shown.

3.  **CONTINUANCE**—Absent Witnesses—Diligence to Procure—Discretion. Where a record shows that the trial docket made up by the clerk shows a case to have been set for the 6th of June, and that when such cause is called the court of its own motion set it down for trial on the 15th, and then on the 15th reset it for the 19th, and the record shows that the complaining party was present at each calling of the case and made no effort to prepare for trial, it was not an abuse of discretion to overrule a motion for continuance because of absent witnesses, where no diligence had been shown to procure the attendance of such witnesses.

4.  **TRIAL**—Refusal of Instructions Covered. Although requested instructions may correctly state the law, yet, if the law applicable to the issues involved in the case is fairly and substantially given by the court in its charge, a judgment will not be reversed because of refusal to give such requested instructions.

5.  **CARRIERS**—Injury to Passenger—Petition. Where the allegations in a petition show that the plaintiff was a passenger on defendant's train by right of a ticket regularly purchased from defendant's agent, and shows that while thus riding on such train, and without any fault on plaintiff's part, the train ran off of the track, and that the coach in which plaintiff was riding was turned over, and that plaintiff sustained severe injuries, and

shows the extent thereof and of what they consisted, and that such injuries were the proximate result of the derailment and overturning of such coach, and that such derailment and overturning of such coach was due to, and the proximate result of, the rotten condition of the cross-ties, and charged the carrier with carelessness and negligence in operating such train over such ties, and that the derailment and the injuries sustained therefrom were the proximate result of the carrier's negligence and carelessness, such statement of facts is sufficient to constitute a cause of action for negligence.

6.  SAME—Duty to Passengers—Negligence—What Constitutes. Section 800, Rev. Laws 1910, provides: ''A carrier of persons for reward must use the utmost care and diligence for their safe carriage, and must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill''— and a violation of the duty thus enjoined by law, or a failure to exercise the degree of care imposed by law for the protection of passengers, and failure to exercise a reasonable degree of skill to that end, constitutes negligence per se.

7.  SAME—Injury to Passenger—Negligence—Burden of Proof. Where the plaintiff has shown by competent evidence, to the satisfaction of the jury, that she was a passenger on defendant's train, and that such train was derailed, and that such derailment was proximately caused by the decayed and rotten condition of the cross-ties and the defective, careless, and negligent manner in which the rails were spiked to the ends of such cross-ties, and shows to the satisfaction of the jury that the injuries complained of and the extent thereof were the direct and proximate result of such derailment, she has made a prima facie case which raises a presumption of negligence, and the burden is upon the carrier to overcome such presumption to the satisfaction of the jury.

(Syllabus by Harrison, C.)

Error from District Court, Hughes County;
John Caruthers, Judge.

Action by Anna Vandivere against the Missouri, Oklahoma & Gulf Railway Company, for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

E. R. Jones and J. C. Wilhoit, for plaintiff in error.

C. H. Tully and Walker & Fancher, for defendant in error.

Opinion by HARRISON, C.   This was an action by Anna E. Vandivere against the Missouri, Oklahoma & Gulf Railway Company, for damages sustained in the wreck of a passenger train on defendant's road. On November 11, 1909, plaintiff was a passenger on defendant's road traveling from Dustin, Hughes

county, to Hoffman, McIntosh county, Okla. About 3 :30 o'clock in the afternoon of said day, a wreck occurred, the train was derailed, several coaches ran off the track, and the coach in which plaintiff was riding turned over, throwing plaintiff out of her seat and lodging her in a parcels rack on the opposite side of the coach, causing injuries for which she brought suit for $10,000. The cause went to trial June 19, 1911, and verdict was rendered June 21, 1911, in favor of plaintiff for the sum of $3,000, upon which verdict judgment was rendered, and, from such judgment and the order overruling motion for new trial, the railway company appeals, specifying 33 separate assignments of error. These we will group under the separate propositions to which they relate and determine them in their order. The facts will more fully appear in the opinion.

One assignment upon which plaintiff in error seems to rely, at least one to which a good portion of its brief is devoted, is that a trial docket was not made out by the clerk twelve days before the first day of the term. Plaintiff in error opens its argument in its brief with the following statement:

"The record in this case, as shown in the statement of this brief, shows clearly that the case was set for trial on the 6th day of June, 1911, for the 15th day of June, 1911, and that the district court of Hughes county was convened on the 5th day of June, 1911. The clerk was by the court itself directed to set this case for trial on the 15th day of June, 1911, and the order was made and entered in open court."

Sections 5832 and 5837, Comp. Laws 1909 (Rev. Laws 1910, secs. 6164 and 6769), are then quoted in the brief, after which plaintiff in error makes an extended argument and citation of authorities in support of the contention that the clerk is absolutely required by statute to prepare a trial docket twelve days before the first day of the term. The docket in question is not made a part of the record, and does not appear in the record, but it appears from the record that the clerk made out a trial docket. The record does not disclose how many days before the first day of the term, which was June 5th, nor upon what day, it was made up, but it appears that the docket was made, showing that the court would convene on June 5th, and that the case at bar, which

was No. 495 in the court below, was set for June 6th; that on June 6th the court of its own motion reset the cause for June 15th, which was objected to by plaintiff in error; that at a later day in the term, June 13th, the court overruled plaintiff in error's motion to strike the cause from the trial docket, and then offered to change the day of trial and set it for the 16th, in order to give the company one more day. Counsel for the company, however, stated that it did not care to have the change made. Thereafter the cause was set by the court for June 19th, and, all motions, demurrers, etc., having been overruled, the cause went to trial, resulting in the judgment as before stated.

In order to determine whether the court erred in abuse of discretion in overruling the motion to strike the cause from the trial docket for that term, it is necessary to take a chronological review of the pleadings, pleas, motions, and demurrers filed in this cause. The original petition was filed February 5, 1910, some three months or more after the injuries were sustained. Demurrer was filed by defendant March 5, 1910, and overruled in part and sustained in part August 4, 1910, and plaintiff given ten days to file amended petition. The court then adjourned to September 29th. In the meantime, August 11th, plaintiff filed an amended petition. On August 22d defendant filed motion to strike certain redundant matter from the petition. On November 14th notice was filed to take up such motion to strike. On November 19th the motion to strike was sustained. On December 6th the court gave plaintiff until December 28th to file second amended petition, and on December 23d a second amended petition was filed. On January 21, 1911, defendant filed motion to make second amended petition more definite and certain. On March 15th plaintiff filed notice to take up the motion to make more definite and certain. On March 18th such motion was taken up and overruled and defendant given ten days to further plead. Defendant took the full ten days and on March 28th filed answer consisting of a general denial and setting up the defense of contributory negligence. On June 6th the court of its own motion set the cause for June 15th. On June 13th defendant filed motion to strike the cause from the trial docket

on the grounds heretofore stated. On the same day the motion to strike was overruled, and, upon defendant's objecting to changing the date to the 16th, the cause remained, set for trial on the 15th, as first ordered. On June 15th it was reset for the 19th; defendant objecting and excepting. On June 19th defendant filed objections to going to trial on that day and filed motion, supported by affidavits, for continuance for the term. On the same day it filed a motion that plaintiff be required to submit to a physical examination. These motions were all overruled June 19th, and the cause went to trial, resulting as aforesaid.

As before stated, the record does not bear out the contention of plaintiff in error that the clerk failed to make up the docket twelve days before the first day of the term, and, while plaintiff in error argues the effect of such failure, he does not affirmatively state that such was a fact. Defendant in error, page 2 of his brief, states affirmatively that a calendar was prepared by the district clerk twelve days before the convening of the court. Such statement is unchallenged by plaintiff in error. In fact, plaintiff in error seems to complain principally of the court's action in resetting the case after the term began. But. assuming, for argument's sake merely, that the contention is true, the record shows that the issues were made up 85 days before the first day of the term. It further shows that on the second day of the term, June 6th, the court set this cause for trial on the 15th. That plaintiff in error used no diligence in preparing for trial in the meantime, but on the 13th filed motion to strike the cause from the trial docket on the ground that the clerk had failed to make up the docket twelve days before the first day of the term as required by statute. The court heard this motion and overruled it and offered to set the case on the 16th, in order to give plaintiff in error one more day. There is nothing in the record disclosing the court's reasons for overruling this motion. It might have been the exercise of a sound discretion because of the delay which had already occurred, and the further fact that plaintiff in error had used no diligence in preparing for trial, or it might have been that the court found, as a matter of fact, that the clerk had furnished or made up the

docket as required by law. At any rate, in the absence of an affirmative showing to the contrary, the clerk will be presumed to have done his duty, and the trial judge must of necessity be vested with a reasonable scope of discretion in determining such questions and in setting the cases for trial. Section 5833, Comp. Laws 1909 (Rev. Laws 1910, sec. 5042); *Linderman v. Nolan,* 16 Okla. 352, 83 Pac. 796; *Osgood v. Grant,* 44 Neb. 350, 62 N. W. 894; *Crosby v. Kiest,* 135 Ill. 458, 26 N. E. 589; *Mann v. Howe,* 9 Iowa, 546; also cases cited in 46 Am. Dig. 715; 19 Dec. Dig. par. 15. And in the case at bar the court, doubtless perceiving either that it would be unable to try the cause on the 15th, or in order to grant still further time to plaintiff in error, reset the case for the 19th, and on the 19th plaintiff in error, having in the meantime used no diligence to get ready for trial, renewed its objections to going to trial and filed application for continuance on the ground of absent witnesses which had not been subpoenaed.

We are not overly impressed with the consistency of plaintiff in error in so urgently contending for a rule which the record fails to disclose had been violated (the rule requiring the docket to be made), and at the same time asking the court to overlook an equally important rule which the record affirmatively shows had not been observed by plaintiff in error. A number of decisions and other authorities are cited in support of the contention that it is the duty of the clerk to make up the docket twelve days before the first day of the term, but none of these authorities are in point here or at all applicable to the circumstances surrounding the case at bar. They were either cases wherein the issues were not joined before the first day of the term, or cases in which the parties were forced to trial before the day on which the case was set on the trial docket. The case of *First National Bank v. Wentworth,* 28 Kan. 183, upon which plaintiff in error seems most to rely, and from which he quotes at length, was a case which on the first day of the term was pending on demurrer to the petition. The demurrer was overruled on the first day, and judgment by default rendered in favor of plaintiff. Subsequently defendant came in and moved

to set aside the judgment and reopen the case. The motion was overruled and an appeal taken from the order to the Supreme Court of Kansas, wherein the judgment of the trial court, in refusing to reopen the case, was affirmed. Mr. Justice Brewer, who wrote the opinion of the court, said:

"Where a case standing upon demurrer to a petition is properly called for hearing in the absence of the defendant, the demurrer overruled, and judgment entered in favor of the plaintiff, whether that judgment shall be vacated and the defendant permitted to answer and have a trial is a matter resting in the sound discretion of the trial court, and an overruling of an application of the defendant therefor will not be reversed in this court unless, by reason of a clear showing of both diligence and merit, it is apparent that the trial court abused its discretion."

It is true that Justice Brewer in the opinion says:

"This docket must be made out at least twelve days before the term."

But in connection therewith he also says:

"But be that as it may, a mistake of the clerk in arranging the docket does not vitiate the setting of a case upon any particular day, or render illegal a trial upon the day to which it is assigned. Evidently some discretion is given to the clerk in the arrangement of the docket."

In the case at bar we cannot feel justified in reversing this judgment because of the alleged failure of the clerk to prepare a docket twelve days before the first day of the term, since the record fails to show that such contention is true, and fails to show wherein the rights of plaintiff in error were materially prejudiced thereby if it were true, but does show that plaintiff in error had from the 6th to the 19th day of June in which to prepare for trial, and made no efforts whatever to do so. Under these circumstances, we perceive no abuse of discretion in overruling the motion for continuance.

The next contention is that the court erred in refusing to give certain instructions requested by plaintiff in error. These instructions, however, in so far as they correctly state the law, were substantially given by the court. Hence there was no reversible error in refusing to give them. *Pioneer Tel. & Tel. Co. v. Davis, Adm'r*, 28 Okla. 783, 116 Pac. 432; *Gulf, Colorado &*

*Santa Fe Ry. Co. v. Taylor,* 37 Okla. 99, 130 Pac. 574; *Enid City Ry. Co. v. Addie Reynolds,* 34 Okla. 405, 126 Pac. 193.

The next assignment is that the court erred in giving paragraph No. 2 of its instructions, which is as follows:

"Negligence, when applied to a carrier of passengers, in so far as is necessary to define to you in this case, means the failure on the carrier's part to exercise the utmost care and diligence for their safe transportation over its line, and to provide everything necessary for that purpose, and to that end to exercise a reasonable degree of skill in the equipment of its roadbed, cross-ties, and rails. When the plaintiff in this case shows to your satisfaction, by a fair preponderance of the evidence, that she was a passenger on defendant's cars, by virtue of having purchased a ticket from defendant's agent, and while riding on said cars the car in which she was situated was derailed and thrown from the track, caused by reason of defective cross-ties or improper spiking of the rails to the ties, and that she was injured while in said car as a result of the derailment, and that the same was the proximate cause of said injury, and has pointed out to you by competent evidence the character of the injury, she has made out a *prima facie* case which raises a presumption of negligence on the defendant's part which the railroad company has the burden of overcoming by clear and explicit proof that the accident could not have been avoided by the utmost care and diligence, and that, in the construction and maintenance of its roadbed and the laying and maintenance of the cross-ties and rails, it used the utmost care for the safe carriage of passengers over its road, and to that end exercised a reasonable degree of skill in seeing that the road was equipped with proper and sufficiently sound ties and rails that were properly spiked to the ties at the time of the derailment. While the defendant company was bound to use the utmost care and diligence for the safe carriage of passengers for hire on its road, and must provide everything necessary for that purpose, and to that end must have exercised a reasonable degree of skill in the maintenance of its road-bed, cross-ties, and rails to prevent injury to its passengers, the law does not require it to be an insurer of the actual safety of passengers being carried over its road, and in this case, if you believe from the evidence that the injury complained of by the plaintiff was occasioned by some defect in the roadbed, cross-ties, or rails which a thorough or careful examination would not disclose. and that it could not have been guarded against by the exercise of skill in the employment of

men and means to have avoided the injury, the defendant would not be liable, and you should so find in your verdict."

Plaintiff in error admits that, had the defendant in error alleged negligence generally, then on proof by her that she was a passenger, that the train in which she was riding was derailed, and she was injured, a presumption of negligence would have arisen which the plaintiff would have been required to rebut, but says:

"We contend that, when the defendant in error charged the plaintiff in error with negligence in constructing its roadbed and directed her proof to that issue, a presumption of negligence never arose in this case, but that she was required to establish her case by a fair preponderance of the evidence, as in any other negligence case. There are well-defined exceptions to the general rule that proof of derailment by a passenger on a railroad train raises a presumption of negligence, and one is that it does not apply where the defect, deficiency, or peculiarity in the carrier's means of transportation or accommodation which was the occasion of the accident was visible to, seen by, or known to, the passenger as well as the carrier."

This statement of plaintiff in error is based upon the contention that defendant in error's cause of action was not based upon a charge of negligence generally, in the operation and management of the train, but that the injury was alleged to have been caused by a defective construction of the roadbed, and that therefore the mere proof that she was a passenger, and proof of derailment and that she was injured thereby, comes under one of the exceptions to the general rule of presumption of negligence, and that the instruction was therefore prejudicial and erroneous. This argument might be well taken and the contention sustained were it based upon a correct premise, but it is not. The charging part of plaintiff's petition reads as follows:

"That on the said 11th day of November, 1909, at or near 3:30 o'clock p. m., while the said defendant's train, composed of an engine and coach in which plaintiff was riding and several other cars, was proceeding over and along said railway at or near a place called North Fork, said place being on defendant's line and between Dustin and Hoffman, aforesaid, defendant carelessly and negligently ran and managed its train over a defective and insufficient track, and over defective and insufficient rails, and

over rails that were not properly spiked to the cross-ties, and over decayed, rotten, and defective cross-ties, and over curves not properly elevated, by reason of all of which acts of carelessness and negligence and mismanagement on the part of said defendant, so done and committed, and without any fault or negligence on the part of this plaintiff, said cars were, at or near said place of North Fork aforesaid, by said defendant, its agents and employees, so carelessly and negligently run and managed as to throw the coach in which this plaintiff was riding aforesaid from said road and against the ground suddenly, and turned the coach in which plaintiff was riding over on its side and against the ground. And the plaintiff avers that, by reason of the said sudden and immediate derailment, * * *" she sustained the injuries complained of.

Hence it will be observed that the defendant in error alleged a state of facts which, if proven to the satisfaction of the jury by a fair preponderance of the evidence, would bring the case under the general rule of a *prima facie* case and raise the presumption of negligence.

It must be observed also that, in the first paragraph of the foregoing instructions, the court placed no greater degree of care upon the carrier than is placed by the plain letter of the statute. Section 800, Rev. Laws 1910, provides:

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

Now the petition alleged that the derailment which caused the injury was caused by the careless and negligent running of said train over rotten and defective cross-ties and over rails not properly spiked to the cross-ties, and the court tells the jury:

"When the plaintiff in this case shows to your satisfaction, by a fair preponderance of the evidence, that she was a passenger on defendant's cars by virtue of having purchased a ticket from defendant's agent, and while riding on said cars the car in which she was situated was derailed and thrown from the track, caused by reason of defective cross-ties or improper spiking of the rails to the ties, and that she was injured while in said car as the result of the derailment, and that the same was the proximate cause of said injuries, and has pointed out to you by competent evidence the character of the injury, she has

made out a *prima facie* case which raises a presumption of negligence on the defendant's part which the railroad company has the burden of overcoming. * * *"

This instruction to this point is a correct statement of the law. See 16 Cyc. pp. 932-933; 29 Cyc. p. 599; 3 Thompson on Negligence (2d Ed.) 2754-2762, inclusive, and authorities cited in notes; 2 Enc. of Ev. 914-918, inclusive, and authorities cited in support of the text. In 916, *Id.*, the rule is stated thus:

"A presumption of negligence upon the part of the carrier arises on proof that the injury to the passenger resulted from the derailment of the car or train on which he was riding."

This rule has been followed and the text supported by a number of decisions from each of twenty odd states. It is true the same text goes on to say:

"But where the passenger does not rest upon the fact of the derailment, but shows the manner in which the accident happened, he must show negligence upon the carrier's part."

Only one decision, viz., *Buckland v. N. Y., N. H. & H. R. Co.*, 181 Mass. 3, 62 N. E. 955, is cited in support of the latter rule. But it is immaterial in the case at bar whether the latter statement of the law is correct or not, for, admitting it to be correct, the defendant in error has fully met the requirements of the rule. She introduced several witnesses who testified that at the point of derailment, and for a distance of seven or eight rails, 33 feet each, the cross-ties were so rotten that some of them had crumbled off at the ends, and that "you could pull the spikes out with your fingers"; some of them were rotted in two in the middle, and others so badly rotted that the section hands passing back and forth over the track could stick their picks down through the ties into the ground, and that the derailment did not occur until the train struck the rotten ties. If the jury believed this to be true, and were satisfied, by a fair preponderance of the testimony, that such was true, they were justified in finding that the carrier was negligent in failing to exercise the degree of care imposed upon it by statute, and the court was justified, under the allegations in the petition and the evidence submitted, in giving the foregoing instruction.

In the case of *C., R. I. & P. Ry. Co. v. Pitchford,* not yet officially reported, this court held:

"As a general rule, the violation of a public duty enjoined by law for the protection of persons or property constitutes negligence *per se.* Where the circumstances of the case are such that the standard of duty is fixed and defined by law, and is the same under all circumstances, the omission of this duty is negligence."

It is true that the carrier introduced testimony tending to show that some of the coaches left the track before they reached the rotten ties, but, as to this contention, the jury were the exclusive judges of the credibility of the wtinesses and were at liberty to disregard such testimony. Besides, if it were true that some of the coaches did leave the track before they reached the rotten ties, this by no means disproved the fact that the derailment was caused by reason of the rotten ties. There is also testimony that such ties had been in for a period of five years or more; that they were red oak ties; and that red oak ties would not remain sound for that length of time. This being true, we think a clear case of carelessness and negligence in attempting to operate a train over this character of road was shown. Besides, there was testimony which warranted the inference that the employees of the railway well knew of the defective condition of the track, for that. they had a regular section crew passing back and forth over this section of the track every day and had a special repair crew in that neighborhood putting in new ties. The only error we observe in the foregoing instruction is that the court told the jury that the burden which had been cast upon the railway company should be overcome by clear and explicit proof that the accident could not have been avoided by the use of the utmost care and diligence. This language would seem to impose a greater burden upon the carrier than is generally imposed by the weight of authority; the general rule being, and we think the sounder rule, that the presumption arising from a *prima facie* case must be overcome to the satisfaction of the jury. 3 Thompson on Negligence (2d Ed.) 218, and authorities cited in notes. And, while the language of the court's charge in the case at bar would seem to impose a heavier burden upon the defendant

below than is sought to be imposed by the language of the general rule, yet, under the overwhelming evidence of negligence in this case in attempting to operate a passenger train over this character of road, we cannot be constrained to reverse this judgment because of the possible difference between the burden imposed under the language of the court's charge and that imposed by the above. rule. If the jury believed the testimony of the plaintiff's witnesses and disbelieved the testimony of defendant's witnesses, which was their province to do, then their verdict as to the liability of the company for negligence could not have been otherwise, no matter what the instruction, unless the court should have peremptorily instructed in favor of the railway company.

The next propositions urged go to the error of the court in overruling the motion for new trial because of errors and irregularities occurring during the trial and duly excepted to. These alleged errors and irregularities consisted in certain remarks made by the court and certain remarks made by counsel for plaintiff and in the admission and rejection of certain testimony. We have read the record closely and have examined the authorities cited in support of plaintiff in error's contention, and believe that it is but right we should say that such contentions are without merit.

We feel convinced from the record that the defendant in error's injuries, and the extent of her injuries, and the amount of damages to which she was entitled were the proximate result of plaintiff in error's negligence, and that the judgment should be affirmed.

By the Court: It is so ordered.